## TUCKER *et al. v.* ROBERTS *et al.*

1. Where persons, holding office as processioners in a militia district in
a particular county in this State, entertain an application by a land-
owner to survey and mark a land line as authorized by statute, and
after surveying and marking the line file their report with the
ordinary as required by statute, even if such persons do not hold office
under lawful appointment, they are officers de facto, and the report
filed by them should not be set aside on the ground that the appoint-
ment of the officers was unauthorized by law.

2. The prescribed powers and duties imposed on processioners appointed
under the provisions of the Civil Code, § 3817 et seq., are quasi judicial,
and the body of processioners in a given district is a "commission"
within the meaning of the Civil Code, § 4642, which declares that "No
judge or justice of any court, no ordinary, justice of the peace, nor
presiding officer of any inferior judicature or commission, can sit in any
cause or proceeding in which he is pecuniarily interested, or related

48

to either party within the fourth degree of consanguinity or affinity. . ."

(*a*) Where a processioner in a proceeding to procession land lines is related within the fourth degree by consanguinity or affinity to the applicant alone, or to both the applicant and protestant, he is disqualified, and such disqualification is sufficient ground for setting aside a return of the processioners in which he participated.

(*b*) Where the respective great-grandfathers of the processioner and parties at interest are brothers, the processioner is related by consanguinity within the fourth degree to such parties.

No. 2255. AUGUST 10, 1921.

Processioning. Before Judge Eve. Irwin superior court. August 17, 1920.

In May, 1919, the ordinary of Irwin County appointed Moses Deniels, George Grantham, and John Lisenby as land processioners of the 1529th Georgia militia district of that county. On July 23, 1919, Walton Tucker and Nellie Tucker applied to the processioners in conformity with the statute (Civil Code, § 3818), to have a certain land line "run and marked anew." Notice was duly served on persons to be adversely affected; and subsequently on August 15, 1919, the processioners, in conjunction with the county surveyor of an adjoining county (the county surveyor of Irwin County being disqualified), proceeded to "run and mark anew" the line; and on August 19, 1919, after completing the work they filed their return with a certified plat made by the surveyor in the office of the ordinary. On September 15, 1919, Ella Roberts as administratrix of the estate of William Roberts, deceased, and Isaac Roberts as guardian ad litem for the minor children of William Roberts, deceased, filed in the office of the ordinary a motion (called a plea in abatement) to dismiss the entire processioning proceedings, on the grounds: (*a*) That the processioners were not legally appointed, because they were appointed by the ordinary, whereas under the act approved August 5, 1913 (Acts 1913, p. 403), creating the office of commissioner of Irwin County, the commissioner alone had authority to appoint processioners in Irwin County. (*b*) That two of the processioners were disqualified on account of relationship to the applicants. On September 18, 1919, the ordinary transmitted all papers in the processioning proceeding to the superior court. When the case came on for a hearing (August 17, 1920) at an adjourned term of the superior court, Walton Tucker and Nellie Tucker filed a motion to dismiss the "plea in abatement," on the grounds: (*a*)

That under proper construction the language of the act of 1913 (Acts 1913, p. 403), referred to above, does not confer on the commissioner of roads and revenue of Irwin County exclusive jurisdiction to appoint land processioners in that county. (*b*) If the act purports to confer such jurisdiction, the act is unconstitutional as violative of article 1, section 4, paragraph 1, of the constitution of this State (Civil Code, § 6391), which provides that "no special law shall be enacted in any case for which provision has been made by an existing general law," there being an existing general statute, as embodied in the Civil Code, § 3817, for appointment of land processioners. It was prayed that the allegations as to the relationship of the processioners to the applicants for procession be inquired into by the court. The judge overruled the motion to dismiss the "plea in abatement," and proceeded to hear evidence on the question of relationship as set up in the plea. The undisputed evidence was to the effect that the great-grandfathers of Walton Tucker, one of the objectors, and George Grantham, one of the processioners, were brothers, and that the same relation existed between the processioner George Grantham and William Roberts, deceased, whose administratrix was a party on the opposite side of the case from Walton Tucker. Upon the evidence the judge sustained the "plea in abatement." The applicants for procession came by direct bill of exceptions and assigned error upon both rulings of the court.

*Philip Newbern* and *Warren Mixon,* for plaintiffs.

*Rogers & Rogers,* for defendants.

ATKINSON, J. 1. It is urged by the motion to dismiss the processioning proceedings, that the appointment of the processioners by the ordinary was illegal, because the act of 1913 (Acts 1913, p. 403), creating the office of county commissioner for Irwin County, withdrew jurisdiction from the ordinary and conferred exclusive jurisdiction over that matter upon the commissioner. On the other hand it was urged, by the motion to dismiss the above-mentioned motion, that the act of 1913, supra, does not purport to withdraw from the ordinary jurisdiction over the matter or to confer jurisdiction upon the county commissioner to appoint processioners, but, even if it did, that the act was violative of certain provisions of the constitution, and void. These contentions

go to the right of the ordinary to appoint processioners, and are collateral to the matter of validity of the official actions of the processioners, which is the controlling question in the case. Under these circumstances no decision will be made as to the merits of any such contentions. In *Brown* v. *Flake,* 102 *Ga.* 528 (29 S. E. 267), it was held: "Where an act of the General Assembly created a board of county commissioners for a given county, and provided for the selection of such commissioners by the grand jury of the county, and subsequently the act creating such board was amended by providing that such commissioners should be elected by the qualified voters of the county, and subsequently to the passage of the amending act such commissioners were continuously elected by the grand jury, and no election by the qualified voters was called or held, and the commissioners so selected continued for several years to perform the duties imposed by law on the commissioners of such county, and their acts as commissioners were recognized and acquiesced in by the people of the county for a long period of time, the persons so selected by the grand jury and discharging the duties of county commissioners were de facto officers, and their acts as such, within the scope of the powers conferred on the board of county commissioners, were legal; and a tax authorized by law, levied by such commissioners for county purposes, was a valid and binding tax." In *Hawkins* v. *Jonesboro,* 63 *Ga.* 527, it was held: "Though a statute require all voters to be registered, and none are registered, yet if an election be held, and certain town officers provided for by law be elected by the votes cast, and the persons thus elected enter upon and exercise their functions under color of such election, their predecessors yielding to their supposed right, they are officers de facto, and, until displaced, may exercise all the powers of officers de jure." In *Smith* v. *Meador,* 74 *Ga.* 416 (58 Am. R. 438), it was said: "If, after the expiration of the term for which a commercial notary was appointed, and before that fact was discovered, he attested an affidavit, both parties acting in good faith, if not an officer de jure, he would, in such transaction, be an officer de facto, and his attestation would not be void. The doctrine of the recognition of the acts of de facto officers is founded on considerations of public policy." Under the principle of the foregoing decisions, the processioners, if not de jure officers, were

de facto officers, and their official action done under color of office should not have been set aside on the ground of want of power in the ordinary to appoint them. See also *Slate* v. *Blue Ridge,* 113 *Ga.* 646 (3) (38 S. E. 977), and cit.; State *v.* Carroll, 38 Conn. 449 (9 Am. R. 409) ; 22 R. C. L. 588, § 306; Hildreth *v.* McIntire, 1 J. J. Mar. (24 Ky.) 206 (19 Am. D. 63, and cases cited in note). But while it was error to set aside the action of the processioners on this ground, the judgment of the court will not be reversed on account of such error, because, as will appear in the next division of this opinion, the action of the processioners was properly set aside on another ground.

2. Does the proved relationship of the processioner to the applicants for procession render void the return of the processioners? The office of processioner is statutory. Civil Code, §§ 3817. et seq. The statute providing for the appointment of processioners does not in terms disqualify a processioner on account of relationship to a party at interest in a processioning proceeding. The only language in the statute that might bear on the subject of qualifications of such officers is " three suitable persons in every militia district." The only statutory provision for disqualification on such ground is to be found in the Civil Code, § 4642, which declares: " No judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior ·judicature or commission, can sit in any cause or proceeding in which he is pecuniarily interested, or related to either party within the fourth degree of consanguinity or affinity, nor of which he has been of counsel, nor in which he has presided in any inferior judicature when his ruling or decision is the subject of review, without the consent of all the parties in interest." Under this statute, relationship to a party within the prohibited degree will disqualify a judge of a court, and similarly any " presiding officer of any inferior judicature or commission." If processioners as a body are to be classed as a commission within the meaning of this statute, then under the terms of the statute .relation of a processioner within the prohibited degree to a party at interest will disqualify such processioner from presiding in any particular case. To render processioners such a " commission," their prescribed duties and powers must be judicial in character. The following sections of the Civil Code state the powers and duties

of processioners: "§ 3818. . . Every owner of land, any portion of which lies in any district, though the remainder lies in an adjoining district or an adjoining county, who desires the lines around his entire tract to be surveyed and marked anew, shall apply to the processioners of said district to appoint a day when a majority of them, with the county surveyor, will trace and mark the said lines. Ten days written notice of the time of such running and marking shall be given to all the owners of adjoining lands, if resident within this State; and the processioners shall not proceed to run and mark such lines until satisfactory evidence of the service of such notice shall be produced to them." § 3819. . . "It shall be the duty of the county surveyor, with the processioners, taking all due precaution to arrive at the true lines, to trace out and plainly mark the same. The surveyor shall make out and certify a plat of the same, and deliver a copy thereof to the applicant; and in all future disputes arising in reference to the boundary lines of such tract, with any owner of adjoining lands, having due notice of such processioning, such plat, and the lines so marked, shall be prima facie correct and such plat, certified as aforesaid, shall be admissible in evidence, without further proof." § 3825. . . "The processioners shall make a return of thier acts within thirty days, together with the plat of the surveyor, to the ordinary of the county, to be kept on file in his office." § 3820. . . "In all cases of disputed lines the following rules shall be respected and followed: Natural landmarks, being less liable to change, and not capable of counterfeit, shall be the most conclusive evidence; ancient or genuine landmarks, such as corner station or marked trees, shall control the course and distances called for by the survey. If the corners are established, and the lines not marked, a straight line, as required by the plat, shall be run, but an established marked line, though crooked, shall not be overruled; courses and distances shall be resorted to in the absence of higher evidence." § 3821. . . "General reputation in the neighborhood shall be evidence as to ancient landmarks of more than thirty years standing; and acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." § 3822. . . "Where actual possession has been had, under a claim of right, for more than seven years, such claim shall be respected, and the

lines so marked as not to interfere with such possession." § 3823. . . "Any owner of adjoining lands, who may be dissatisfied with the lines as run and marked by the processioners and surveyor, may file his protest thereto with the ordinary within thirty days after the processioners have filed their returns, specifying therein the lines objected to, and the true lines as claimed by him; and it shall be the duty of the ordinary to return all the papers, including the plat made by the surveyor, with said protest, to the clerk of the superior court of the county or counties where the disputed land lies (copies being sent to the adjoining counties); and it shall be the duty of the clerk to enter the same on the issue docket, as other causes, to be tried in the same manner and under the same rules as other cases. The verdict of the jury, and the judgment of the court, shall be framed to meet the issue tried and decided: Provided, it shall not be necessary to run any lines between adjoining landowners except the lines in dispute." § 3824. . . "The applicant shall pay to each of the processioners [two dollars] per day for his services, and to the county surveyor [five] dollars per day for his services. If a protest is filed, the costs of the court shall abide the issue." § 3826. . . "When any watercourse is one of the boundary lines of a tract of land, and its course shall have been changed by nature or art, so that its present channel shall cut off a part of said land, the processioners and surveyor shall certify the fact, and the plat of the surveyor shall plainly mark the original and present channels, designating the exact quantity of land so cut off."

Referring to these statutes it has been held that "Processioners have no power to ascertain and fix new lines, but only to run and mark those which were formerly located and established." *Amos* v. *Parker*, 88 *Ga.* 754 (16 S. E. 200); *Wheeler* v. *Thomas*, 139 *Ga.* 598 (77 S. E. 817). The power to "run and mark" lines that were formerly located or established is thus recognized. The conclusiveness of the action of processioners in running and marking pre-existing lines was not decided, but the statute on that subject clearly makes their action prima facie binding. For instance, a definite time must be fixed for surveying and marking the line, of which ten days written notice shall be given all the owners of adjoining lands, "if residents within this State." Civil Code, § 3818. After the line is surveyed and marked by at least

a majority of the processioners in conjunction with the county surveyor, the surveyor shall make out and certify a plat of the same and deliver a copy thereof to the applicant; and in all future disputes arising in reference to the boundary lines of such tract, with any owner of adjoining lands, "having due notice of such processioning," such plat, and the lines so marked, "shall be prima facie correct, and such plat, certified as aforesaid, shall be admissible in evidence, without further proof." Civil Code, § 3819, While the action of the processioners is only prima facie binding, it establishes to that extent a status between the applicant and the parties notified. In tracing the lines the processioners are required to observe prescribed rules, and among other things give effect to extraneous evidence tending to show the true location of the old line. Civil Code, §§ 3820, 3821, 3822. After action by the processioners and the filing of their report in the office of the ordinary of the county, as provided in the Civil Code, § 3825, any adjoining landowner, dissatisfied with the line, may file a protest; whereupon all the papers including the plat made by the surveyor shall be transmitted to the superior court, to be entered on the docket as other causes, "to be tried in the same manner and under the same rules as other cases," and the verdict of the jury and judgment of the court shall be framed to meet the issue tried and decided. Civil Code, § 3823. The judgment so rendered is final and conclusive as to location of the line. *Stovall* v. *Caverly,* 139 *Ga.* 243 (77 S. E. 29). The requirements as to notice to adjoining landowners to be adversely affected, and the provision for prescribed rules under which extraneous evidence shall be considered by the processioners, and the declaration that the plat made by the surveyor and reported by the processioners to the ordinary shall on any future issue be prima facie correct as against adjoining landowners who were duly notified, all tend to characterize the duties of processioners as judicial. Further indications of the judicial character of such duties are the provisions that after the report is filed in the office of the ordinary a protest may be filed, and that the ordinary shall transmit the application for procession and return of the processioners, including the plat of the surveyor, to the superior court, to be docketed and tried as other cases; and in such case all the prescribed "costs" shall abide the decision of the court. The action of the

processioners in surveying and marking the line involves decision as to the true location of the old line. This and the act of reporting the findings of the processioners to the ordinary are but steps in a legal controversy, which may end at the filing of the report, or at final judgment in the superior court in the event a protest is filed. In this connection the provision that all costs shall abide the final judgment is significant. Why tax the pay provided for processioners as cost to abide the final judgment, if the processioning was not judicial and connected with the superior-court case? In *Wilkowski* v. *Halle*, 37 *Ga.* 678 (95 Am. D. 374), the question was whether an attorney at law of a party, who was a notary public, was competent to qualify his client to an affidavit to be used as a basis for an attachment. It was held that the attorney was not competent. In the course of the opinion it was said: " Shall the attorney of the plaintiff take this bond, which the law provides for the defendant's security against a wrongful issuing of the attachment? Shall the plaintiff's attorney be the judge as to the sufficiency of the bond to protect the opposite party, and as to the solvency of the surety? Is not this, at least, a quasi judicial proceeding? The officer, taking the affidavit, is in duty bound to take the bond, to decide upon its sufficiency, its legality, and its solvency. Does not this duty come within the prohibitions of sec. 193, Rev. Code [Civil Code, § 4642], which says: ' No judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature or commission, can sit in any cause or proceeding in which he is pecuniarily interested, or related to either party within the fourth degree of consanguinity or affinity, nor in which he has been of counsel, without the consent of all the parties in interest'? Is not the taking of the affidavit of the plaintiff, and bond to indemnify the defendant against damages and costs, ' a proceeding' in which the attorney for the plaintiff, in this case, ' sits'? He decides upon these things." The decision was not based entirely on the reasons above set forth, but it was evidently the view of the court that one reason for the attorney's disqualification was that his duties were judicial in character. In *Spearman* v. *Wilson*, 44 *Ga.* 473, it was held that an arbitrator was disqualified on account of relationship, because his son purchased the property involved pending the arbitration, the basis of

the decision being that the duty of the arbitrator was judicial in character. Under a proper construction the powers and duties of processioners, as declared in the statutes above quoted, involve such investigation and such decision upon the part of the processioners, and their decision has such effect, as to render the functions of the processioners judicial in character and classify the official body of processioners as a commission, within the meaning of the Civil Code, § 4642. This being so, relationship of a processioner to a party within the prohibited degree will disqualify the processioner. Applying this rule, the processioner whose qualification was attacked in the present case was disqualified on account of his relationship to the applicant, because the respective great-grandfathers of the processioner and the applicant were brothers. *Short* v. *Mathis,* 101 *Ga.* 287 (28 S. E. 918). The statute disqualifies a judicial officer where his relation to a party at interest is within the fourth degree by consanguinity or affinity, and makes no exception on account of being related equally or otherwise to a party on the opposite side of the controversy. The fact that the processioner is related within the prohibited degree to the parties on both sides of the controversy does not, as contended, relieve the disqualification. Under the Civil Code, § 3818, it would have been competent for two of the processioners to have acted in the matter and made the return, but that would not, as contended, save the return which was participated in by all of the processioners, including the one disqualified. It is similar to a case where a disqualified juror serves upon a jury. In *Georgia Railroad* v. *Cole,* 73 *Ga.* 713, it was said: " A jury composed of men who are not lawful men — men whose relationship to the parties renders them incompetent as jurors, cannot render a lawful verdict. If the parties consent to the jurors, or have knowledge of their incompetency, then they will be held to waive the same. It cannot be said that the defendants in error have had their case tried; certainly not legally, and, although the verdict may be in accordance with the facts, and such as a lawful jury should have rendered, yet it is no verdict, and the court did right to set it aside." As the processioner was disqualified and participated in the processioning proceedings, the judge did not err in dismissing the proceeding. There was no contention that the protestants waived the disqualification or evi-

dence as to such waiver, and no ruling will be made on that subject.        *Judgment affirmed. All the Justices concur.*