## FRISBY E. DIEHL v. EDWARD P. TOTTEN.

(155 N. W. 74.)

Defendant, while a candidate for office published the communication set forth in the opinion. Upon contest it is claimed that such publication disqualifies him from holding such office under the corrupt practice act.

**Corrupt practice act — county judges — within its provisions — constitutional questions — lower court — must there be properly raised — appellate court.**

1. Conceding that members of the United States Senate and Congress from this state and state officers subject to impeachment may not be removed from office under the corrupt practice act, yet a good and valid piece of legislation remains. The office of county judge comes within the provisions of said act. Moreover in the case at bar constitutional questions were not sufficiently raised in the lower court.

**Action — legal capacity to maintain.**

2. Under the facts in this case plaintiff has shown a legal capacity to maintain the action.

---

Note.—On the analogous question of validity of agreement to accept less than the legal amount of compensation for a public office, see note in 36 L.R.A.(N.S.) 244; and as to agreement to divide fees or salary of public officer, see notes in 12 L.R.A. (N.S.) 612, and 43 L.R.A.(N.S.) 422.

On the general question of agreements tending to influence elections, see note in 51 L.R.A.(N.S.) 549.

**County judge — election — candidate for — publication to electors — salary
— offer to refund in part — corrupt practice act — violation of.**

3. The publication in question, which contains the following language: "I pledge the people of Bowman county that if elected to that position I will turn back into the treasury of the county all salary above the amount of $1,500 a year,"—is *held* to be a violation of the corrupt practice act and disqualifies defendant from holding such office.

Opinion filed October 11, 1915. Rehearing filed November 24, 1915.

Appeal from the District Court of Bowman County, *Hanley, J.*
Affirmed.

*Purcell, Divet, & Perkins,* for appellant.

The statute in question, the corrupt practice act, is unconstitutional. It is general in its terms and assumes to apply to all candidates for public office. Its consequences are also general,—applying to all who seek the public favor in an election. Const. §§ 47–173, 196, 197; U. S. Const. § 5, art. 1.

A separation of a statute to sustain a part can only be resorted to when it affirmatively appears that the legislature would have enacted the part sought to be sustained, independent of the other part, if the vice had been called to its attention. McDermont v. Dinnie, 6 N. D. 278, 69 N. W. 294; Angell v. Cass County, 11 N. D. 265, 91 N. W. 72; Poindexter v. Greenhow, 114 U. S. 270, 29 L. ed. 185, 5 Sup. Ct. Rep. 903, 962.

"These are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see and to declare that the intention of the legislature was that the part pronounced valid should be enforceable even though the other parts should fail." O'Brien v. Krenz, 36 Minn. 136, 30 N. W. 458; Chicago, M. & St. P. R. Co. v. Westby, 47 L.R.A.(N.S.) 106, 102 C. C. A. 65, 178 Fed. 619; State ex rel. Selliger v. O'Connor, 5 N. D. 629, 67 N. W. 824.

"If the different portions of the statute are so interwoven and interdependent that the rejected portion furnishes to an appreciable extent the consideration or inducement for the passage of the act, then the entire enactment must be rejected." McDermont v. Dinnie, 6 N. D. 283, 69 N. W. 294; Poindexter v. Greenhow, 114 U. S. 270, 29 L. ed. 185, 5 Sup. Ct. Rep. 903, 962; Spraigue v. Thompson, 118 U. S. 90,

30 L. ed. 115, 6 Sup. Ct. Rep. 988; Chicago, M. & St. P. R. Co. v. Westby, 47 L.R.A.(N.S.) 97, 102 C. C. A. 65, 178 Fed. 619; State ex rel. Selliger v. O'Connor, 5 N. D. 629, 67 N. W. 824; United States v. Reese, 92 U. S. 214, 23 L. ed. 563; Cella Commission Co. v. Bohlinger, 8 L.R.A.(N.S.) 542, 78 C. C. A. 467, 147 Fed. 419, and cases cited; Butts v. Merchants' & M. Transp. Co. 230 U. S. 126, 57 L. ed. 1422, 33 Sup. Ct. Rep. 964; James v. Bowman, 190 U. S. 127, 47 L. ed. 979, 23 Sup. Ct. Rep. 678.

The statute is wholly penal, and that it is punishment that is intended as the end to be attained. If this is true, the officer charged is entitled to have the question of his guilt determined by a jury. The statute cannot go to the right of an elected party to occupy the office to which he has been elected. 15 Cyc. 393–398.

The criminal court can pronounce a judgment of disfranchisement. Baum v. State, 157 Ind. 282, 55 L.R.A. 250, 61 N. E. 672; State ex rel. Crow v. Bland, 41 L.R.A. 297, 46 S. W. 440; People ex rel. Akin v. Kipley, 171 Ill. 44, 41 L.R.A. 785, 49 N. E. 229.

The plaintiff has no standing because of the fact that he received the second highest number of votes at the election. He was the incumbent in office preceding the election in question, and was a candidate for reelection to the same office. By the so-called failure of the election or qualification of the defendant, the repudiated candidate comes into no right. Therefore, he has not capacity to maintain this action. State ex rel. Clawson v. Bell, 13 L.R.A.(N.S.) 1013, and cases cited in the note, 169 Ind. 61, 124 Am. St. Rep. 203, 82 N. E. 69.

It is only where an officer is elected and qualified and where no vacancy exists, that there can be a holdover. Taylor v. Sullivan, 45 Minn. 309, 11 L.R.A. 272, 22 Am. St. Rep. 729, 47 N. W. 802; State ex rel. Atty. Gen. v. Seay, 64 Mo. 89, 27 Am. Rep. 206; State ex rel. Elliott v. Bemenderfer, 96 Ind. 374.

It must be shown that sufficient votes were obtained by the improper means charged to change the result of the election. Especially is this true where the officer is at most only guilty of a mistake. People ex rel. Bush v. Thornton, 25 Hun, 456; State ex rel. Dithmar v. Bunnell, 131 Wis. 198, 110 N. W. 177, 11 Ann. Cas. 560; State ex rel. Leonard v. Rosenthal, 123 Wis. 442, 102 N. W. 49.

*Emil Scow,* for respondent.

The office of county judge is an elective office. Such officer is elected for a term of two years, and until his successor has been elected and has qualified. If no successor is "elected and qualified," he becomes a holdover. State ex rel. Bickford v. Fabrick, 16 N. D. 94, 112 N. W. 74; Jenness v. Clark, 21 N. D. 150, 129 N. W. 357, Ann. Cas. 1913B, 675.

The offer made by the contestee to return back to the treasury of the county a certain portion of his legal and fixed salary, if the voters would elect him, was a violation of the corrupt practice act of this state, and disqualified him from holding such office of county judge. Such act should be liberally construed. Nelson v. Gass, 27 N. D. 357, 146 N. W. 537, Ann. Cas. 1915C, 796; Adams v. Lansdon, 18 Idaho, 483, 110 Pac. 280; Whaley v. Thomason, 41 Tex. Civ. App. 405, 93 S. W. 212; Healy v. State, 115 Md. 377, 80 Atl. 1074; State v. Milby, 26 Wash. 661, 67 Pac. 362; State ex rel. Newell v. Purdy, 36 Wis. 213, 17 Am. Rep. 485; State ex rel. Dithmar v. Bunnell, 131 Wis. 198, 110 N. W. 177; State ex rel. Clements v. Humphries, 74 Tex. 466, 5 L.R.A. 217, 12 S. W. 99; Leonard v. Com. 112 Pa. 607, 4 Atl. 220.

An election secured by a candidate for public office by means of offers to voters to perform the duties of the office for less than the legal fees is void. State ex rel. Atty. Gen. v. Collier, 72 Mo. 13, 37 Am. Rep. 417; State ex rel. Bill v. Elting, 29 Kan. 397.

The figures as to the valuation and population of the county were easily ascertainable by the appellant at the time he made his offer to the voters, and he cannot now be heard to say that he did not know them. He could have known them, and he ought to have known them, and he will be presumed to have known them. Vinal v. Core, 18 W. Va. 38; Ohio Valley Coffin Co. v. Goble, 28 Ind. App. 362, 62 N. E. 1025; State v. Ransberger, 106 Mo. 135, 17 S. W. 290; State v. White, 37 L.R.A.(N.S.) 1177, and note, 237 Mo. 208, 140 S. W. 896; Jarrell v. Young, Smyth, Field Co. 23 L.R.A.(N.S.) 376, and note, 105 Md. 280, 23 L.R.A.(N.S.) 367, 66 Atl. 50, 12 Ann. Cas. 1.

Appellant told the taxpayers of the county "that his offer, if elected, would reduce to some extent the tax burden." If it would have such effect, it certainly was something of value that he promised. Watson v. State, 39 Ohio St. 123, 4 Am. Crim. Rep. 71; Carrothers v. Russell, 53 Iowa, 346, 36 Am. Rep. 222, 5 N. W. 499.

"All elections by the people shall be by secret ballot, subject to such regulations as shall be provided by law." Const. § 129; Fitzmaurice v. Willis, 20 N. D. 372, 127 N. W. 95.

Appellant was just as ineligible to the office at once and upon the making and publishing his offers to the voters and taxpayers, as though he had been an alien, under age, or disqualified in any other manner. Jenness v. Clark, 21 N. D. 150, 129 N. W. 357, Ann. Cas. 1913B, 675; State ex rel. Bickford v. Fabrick, 16 N. D. 94, 112 N. W. 74.

Such a promise as appellant made to the electors is clearly within the condemnation of the statute and adjudicated cases. State ex rel. Dithmar v. Bunnell, 131 Wis. 198, 110 N. W. 177.

BURKE, J.   Diehl was the duly elected, qualified and acting judge of the county court in and for Bowman county, North Dakota, for the years 1913–14. At the general election to choose his successor, held in November, 1914, he was a candidate for re-election and was opposed by Totten. Shortly prior to said election Totten caused to be published in a newspaper of general circulation in said county an article in the following words:

Political Advertisement.
EDWARD P. TOTTEN
For
COUNTY JUDGE
READ HIS PLATFORM AND PLEDGE
(Photograph of Edward P. Totten)
TO THE VOTERS AND TAXPAYERS OF
BOWMAN CO.

In the situation existing in our county to-day, the first duty is to cut down expenses and save the people's money. All unnecessary expenditures should be stopped and rigid economy should be the watchword all along the line. The present heavy load upon the tax-burdened people of this county should be lightened and the public welfare made the first consideration.

The foregoing is a leading plank in the platform upon which I am

seeking election to the office of county judge, and, as evidence of the sincerity of my stand thereon, I pledge the people of Bowman county that, if elected to that position, I will turn back into the treasury of the county all salary above the amount of $1,500 a year. When my opponent went into office two years ago the salary of county judge took a sudden and unexplained leap of several hundred dollars, rising to $1,800 a year, and, while he has been receiving an average of $1,700 during his term, he has left nothing undone to increase that amount and add still further to the burdens of taxation under which the people are laboring. The sum of $1,500 is fair and ample compensation for the work of the office of county judge, brings the salary down to the same basis as that of the auditor and the treasurer, and under all the circumstances is sufficient for any man who does not regard the taxpaying public as a "cow to be milked." It will reduce to some extent the tax burden and should give an effective start to a much-needed movement toward strict economy in all county affairs. The records of this county will prove that, during my service as state's attorney some years ago, more money was turned into the treasury through my activities than the entire cost of maintaining the state's attorney's office, including salary and all expenses, and the taxpayers thereby relieved. Performance while in office ought to be an earnest of the above platform and promise, and I most heartily invite your support and vote for the office of county judge on that record and upon that pledge.

Cordially and sincerely yours,<br>
Edward P. Totten.

At about the same time he wrote personal letters to nearly, if not quite, all of the voters of said county in the following words:

Office of<br>
Edward P. Totten<br>
Lawyer<br>
Bowman, North Dakota.

Dear Sir:—

As a candidate for the office of county judge, I most cordially request the support of your vote and influence at the election. During my

term of service as state's attorney a few years ago more money was turned into the county treasury through my activities than the entire cost of maintaining the state's attorney's office, including salary and all expenses, thus relieving the people of some of the tax burden. This record for economy and efficiency ought, I feel, to entitle my candidacy now to your most earnest consideration, as I am sure you are interested in securing the best available service at the least expense to the people. You will certainly agree with me that we need greater economy in the handling of county affairs, and, as an evidence of the sincerity of my stand upon that issue, I pledge you that, if you will elect me to the office of county judge, I will turn back into the treasury all of the salary above $1,500 a year, which will result in a saving of several hundred dollars to the taxpayers. Under the stress of the hard conditions now existing among our people, due to repeated crop failures, I feel that your servants, the county officers, should do all in their power to keep down the burdens of taxation, even to the extent of making personal sacrifices in the interests of the people. Will you, by your vote, back me on that proposition? During most of the term of the present incumbent of the office, who is my opponent, the salary has been $1,800, and he has been very active in trying to keep up the assessment so as to increase the salary to the highest possible figure. In the midst of the hard times prevailing in this country, I leave it to you whether such action on the part of Mr. Diehl shows that deep interest in the welfare of the people which you rightfully expect of a public officer.

The position of judge calls for the very highest degree of fairness and impartiality in the disposition of the matters coming before the court, and I submit that, among the entanglements and common interests of a law partnership such as that in which Mr. Diehl has been recently engaged, is certainly not the place to look for those extremely necessary qualifications. It would be most unreasonable to expect that the intimate relations existing between Mr. Diehl and his law partner should not produce feelings and prejudice which would make it impossible for him, as county judge, to act with fairness and impartiality where his partner's interests were involved. Particular instances could be given, but it is perhaps sufficient to say that in several cases marked partiality toward that partner has been very noticeable, and has had the effect of weakening materially respect for the decisions of the court.

The letter sent out by that partner in the last campaign, and his present activities along similar lines, in his strenuous efforts to place Diehl on the bench of the county court, where he could be of service to him, furnishes conclusive proof, if any were needed, of the truth of these statements. There ought to be no "partnership business" in the county court, and if you see fit to elect me to that place, you may rest assured that the present favoritism will end, and that all parties will receive the fair and impartial treatment to which they are entitled.

My name appears in the Democratic column, the second column on the ballot, and upon my record of economy in office in former years and my pledge to work for the saving of the people's money in county affairs, I most earnestly solicit your vote and influence at the coming election. As I have been unable to call on you and talk over these and other matters relating to the interests of our county, I am writing you this personal letter, and sincerely hope you will see your way clear to give me your support, which will be heartily appreciated.

Assuring you of my best wishes for your success, I am

Cordially and sincerely yours,

E. P. Totten.

Totten received a majority of the votes cast, whereupon on November 16, 1914, he was served with notice of contest by Diehl upon the grounds that the publication of the first article and the mailing of the second constituted a violation of the corrupt practice act, being article 9 of chapter 11 of the Political Code, Comp. Laws 1913, and particularly §§ 935 and 942 thereof. The said contest was tried in the court below and resulted in findings of fact against the contestee, and judgment was entered accordingly. Contestee appeals, raising, as he says, three practical propositions:

(1) That §§ 923–944, inclusive, Comp. Laws 1913, are unconstitutional. The corrupt practice act attempts to govern the election of all officers, even including United States Senators and members of Congress from this state. It is pointed out that the election of United States Senators and Members of Congress is a matter within the jurisdiction of the United States government; that the election of the members of the local legislature is a matter entirely governed by the legislature itself, and that § 196, Constitution of North Dakota, pro-

vides that the "governor and other state and judicial officers, except county judges, justices of the peace and police magistrates, shall be liable to impeachment. . . ." That § 197 reads: "All officers not liable to impeachment shall be subject to removal for misconduct, malfeasance, crime or misdemeanor in office, or for habitual drunkenness or gross incompetency in such manner as may be provided by law." It is conceded by plaintiff, for the purpose of argument, that in so far as the corrupt practice act provides for the removal of United States Senators, Congressmen, and state officials subject to impeachment from office, it may be unconstitutional, but it is insisted that the remaining provisions of the act relating to county offices, justice of the peace, and other offices not subject to impeachment, is valid.

It is unnecessary for us to express any opinion as to the constitutionality of the sections attacked, for the reason that the same was not raised in the lower court. But it does seem that the provisions of the corrupt practice act would apply to the office of county judge regardless of whether it affected other officials. Even if it be conceded that the United States Senators, members of the legislature, and officers subject to impeachment cannot be so removed, we would still have a valid enactment. The rule to be observed in such cases is first stated in McDermont v. Dinnie, 6 N. D. 278, 69 N. W. 294, where it is said: "In many cases, statutes have been thus destroyed in part and upheld in part. But that can only be done where the statute remaining after the elimination of the unconstitutional portion is in itself a complete law capable of enforcement, and such a one as it is presumed the legislature would have passed without the rejected portions. If the different portions of the statute are so interwoven and interdependent that the rejected portion furnishes—to an appreciable extent—the consideration or inducement for the passage of the Act, then the entire enactment must be rejected."

The matter was again construed in Angell v. Cass County, 11 N. D. 265, 91 N. W. 72, where the same rule is followed, and the quotation taken from Poindexter v. Greenhow, 114 U. S. 270, 29 L. ed. 185, 5 Sup. Ct. Rep. 903, 962, follows: "It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional, and another be declared inoperative and void because unconstitutional; but these are cases where the parts are so distinctly sepa-

rable that each can stand alone, and where the court is able to see and to declare that the intention of legislature was that the part pronounced valid should be enforceable even though the other part should fail. To hold otherwise would be to substitute for the law intended by the legislature one they may never have been willing by itself to enact." This court has adhered to this rule on several occasions since, the latest being Malin v. Lamoure County, 27 N. D. 140, at 154, 50 L.R.A. (N.S.) 997, 145 N. W. 582, where it is said: "The rule is well established that where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter depending upon each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed that the legislature would have passed the one without the other." See Cooley Const. Lim. 7th ed. 246. Also Chicago, M & St. P. R. Co. v. Westby, 47 L.R.A. (N.S.) 97, 102 C. C. A. 65, 178 Fed. 619.

Applying the rules above announced to the facts before us, we have legislation complete in every respect. To be sure, it provides for depriving of office all officers including United States Senators, members of the legislature, and officers for whom the Constitution has provided means for impeachment. The only changes necessary to leave the act indisputably constitutional is to subtract such officers from the phrase "all officers," used in the said act. We see no reason why the remainder of such act cannot stand alone, nor do we see any reason why the legislature would not have enacted the same had they known that certain officers could not be deprived of office in this manner. We conclude, therefore, that they would have enacted the act with those omissions, and that said enactment is constitutional in all respects. Nor do we think there is anything in appellant's contention that he has been deprived of a trial by jury. This proceeding is not in the nature of a criminal action. The loss of the office may be a punishment, but so may be the rendition of a judgment for money in a civil action. Neither is penal. To be sure, §§ 16 and 21 of the act use the word "conviction," but that is a misnomer. Nor is the act unconstitutional because it defines no procedure. Section 942, Comp. Laws 1913, reads: "If upon the trial of any action or proceeding under the provisions of this article for the contesting of the right of any person declared to be nominated

to any office or elected to any office, or to annul or set aside such election, or to remove any person from his office, it shall appear that such person was guilty of any corrupt practice, illegal act, or undue influence in or about such nomination or election, he shall be punished by being deprived of the nomination or office as the case may be, and the vacancy therein shall be filled in the manner provided by law." It seems that the legislature intended this to apply to election contests, actions in quo warranto, actions to remove from office, or other proceedings. No matter what the form of action, if the fact developed that the corrupt practice act had been violated, punishment must follow. But, as a matter of fact, those issues are not really before us. The question of the constitutionality of the act was not raised in the trial below. This appeal is merely from the findings of fact in the lower court, and we are concerned merely with the points raised.

(2) Under this heading appellant insists that Diehl has not legal capacity to maintain this action. Section 1046, Comp. Laws 1913, reads: "Any person claiming the right to hold an office, or any elector of the proper county desiring to contest the validity of an election or the right of any person declared duly elected to any office in such county, shall give notice thereof. . . ." Section 1048, Comp. Laws 1913, reads: "Such contest may be brought by a person claiming such office on his own motion, in his own name as plaintiff but such contest cannot be brought by any other person unless the notice of contest is indorsed with the approval of the state's attorney of the county, or in case of his absence or refusal to approve it, with the approval of the judge of the district court." The action before us is a contest. Diehl claimed the office. His contest complaint stated a cause of action. During these contest proceedings it developed that Totten had issued the objectionable literature and under the plain reading of § 942, Comp. Laws 1913, he was deprived of the office. Diehl unquestionably could maintain the contest.

(3) We now reach the principal contention of appellant: to wit, that the judgment is wrong on the merits. In appellant's brief we are reminded that the corrupt practice act aims only at the use of money corruptly, and that respondent in the case before us acted from high motives and with no intention to directly or indirectly bribe the voters of the county. He says: "In this case there is no corrupt intent, no

wilful wrongdoing, but merely a mistake as to the legal rights of the parties, brought about by public discussion of the question whether the old officer was not collecting a larger compensation than he was entitled to, the defendant having acted . . . in all good faith and with all law-abiding intentions, . . . he is not morally unfit to hold the office, but is possessed with the highest integrity." There is much to support this contention. Had Totten in any manner imagined his offer would be construed as a bribe to the voters, he would not have made it, but nevertheless we cannot accept his interpretation of his language. While the amount involved is small, to approve it would utterly defeat the purposes of the corrupt practice act. If appellant offered his services to the county for $300 per year less than the legal salary, another person might offer to do the work for $1,000 below the salary, and there would, in truth, be nothing to prevent some rich aspirant from offering to donate to the county treasurer huge sums of money and performing the services gratis. That this would be an evil is too plain for argument, and that such conduct was in the contemplation of the corrupt practice act is also plain. We have set forth both documents circulated by appellant in full, in order that anyone reading this opinion may have the same before them. From the letter it will be noted that appellant pledges to turn back into the treasury all of the salary above $1,500 a year, which will result in the saving of several hundred dollars to the taxpayers. He further says: "During most of the term of the present incumbent of the office, the salary has been $1,800." While $600 for a term, divided among the taxpayers of the county is a small item, yet it is an entering wedge which it is well to resist. The corrupt practice act should be liberally construed with the view to its enforcement for the public interest and the purity of elections. Nelson v. Gass, 27 N. D. 357, 146 N. W. 537, Ann. Cas. 1915C, 796. This has been the holding of other states under statutes similar to our own.

The "candidate who . . . offers a voter any money or other property for his vote will be denied the office which in this way he is seeking to obtain . . . though the bribery was indirectly attempted, by an offer to discharge the duties of the office at less than the stated salary, . . . or, even though the bribery consists only in an offer to make a donation to some public purpose." State ex rel. Bill v. Elting, 29 Kan. 397.

"An election secured by a candidate for public office by means of offers to voters to perform the duties of the office for less than the legal fees is void." State ex rel. Atty. Gen. v. Collier, 72 Mo. 13, 37 Am. Rep. 417. In Wisconsin it is stated in regard to the following offer made by a candidate for the same office: "If I shall be elected to the office of county judge I will draw all papers necessary in the settlement of estates and give the necessary advice free." The Wisconsin court held that such promise was clearly within the condemnation of the statute.

Appellant, probably through youth and inexperience, looked upon this act as one of generosity or even justice to the taxpayers of his district, and probably never for a moment realized the construction that would be put upon his words by others. As we have already said, however, the words speak for themselves, and we cannot take appellant's interpretation thereof. That being the case, the best interests of all concerned demand an enforcement of the plain provisions of the corrupt practice act. The judgment of the trial court depriving appellant of said office is affirmed.

Burke, J. (on rehearing). A rehearing was granted in this case upon the proposition involved in ¶ 2 of the opinion. Nothing was advanced, however, which changes our conclusion. Upon the reargument, appellant challenges the conclusion of the trial court "that the contestant, Frisby E. Diehl . . . is entitled to hold said office, and to receive the emoluments thereof until his successor as such county judge is duly and legally elected and qualified according to law."

In his original brief it is said: "Appellant's formal assignments of error raise three practical, general propositions: First, the constitutionality of the statute, §§ 923–944, inclusive; second, the rights given to plaintiff as a private citizen to maintain this action; third, the correctness of the court's determination from the facts, that the offer to return a part of the salary of the office to the treasurer of the county constituted an offer to give something of value to the electors."

We would not, however, be inclined to hold appellant's counsel to a waiver of the other questions if they fairly arose upon the record. However, they do not so arise. Diehl's right to the office as a hold-over was not involved in the contest, and the trial court should not have passed upon this question. Section 173 of our Constitution provides

that the county judge shall hold office for two years and until his successor is duly elected and qualified according to law.  The question now sought to be raised is whether Totten was elected and qualified so as to terminate Diehl's term of office.  It is evident that no matter how this is decided, Diehl is still the *de facto* county judge of Bowman county, entitled to receive salary until such time as a successor is chosen and qualifies.  Whether such successor should be chosen by election or appointment is another question entirely.  As this matter is not before us, we express no opinion thereon.  The trial court merely states, in the language of our Constitution, that Diehl would hold over until his successor should be chosen.  It could not decide in advance the question of the legality of the selection of such successor.