ADAIR *et al.* v. McELREATH *et al.*

No. 6684.   NOVEMBER 15, 1928.

302

*Neel & Neel, Whitaker & Whitaker,* and *J. T. Norris,* for plaintiffs.

*Finley & Henson, Paul F. Akin,* and *W. T. Townsend,* for defendants.

HINES, J. (After stating the foregoing facts.)

■ The first question for decision is whether or not the respondents, in their published announcement of their candidacies for aldermen of the City of Cartersville, violated the provisions of the charter of that city relating to corrupt practices in elections of such officers. The charter of the City of Cartersville contains these provisions: "That any candidate for nomination or election under this act, who shall to any person pay, give, or offer to pay or give, directly or indirectly, money or anything of value, or who shall knowingly suffer any person to do so, for the purpose of obtaining the vote or influence of any elector, or of obtaining his vote or influence against an opposing candidate, shall be disqualified as mayor or commissioner, in addition to the other penalties prescribed by law for such offenses." "It shall be unlawful for any candidate for office or any officer of said city, directly or indirectly, to give or promise any person or persons any office, position, employment, benefit or anything of value, for the purpose of influencing or obtaining the political support, aid or vote of any person or persons." Acts 1911, pp. 919, 925, 933, 934, §§ 12, 23. The purpose of these provisions is to prevent corruption in municipal elections for aldermen of the City of Cartersville. With this end in view, these provisions should receive a fair and liberal construction. In re McLennan, 122 N. Y. S. 409, 410 (65 Misc. 644). It has been held that the words "directly or indirectly," in a similar statute, should be given their broadest meaning. People *v.* Thornton, 60 How. Pr. (N. Y.) 457. We think this rule should be applied in construing the above provisions of the charter of this city.

Applying this rule, what do these provisions of this city charter prohibit? The first provision makes it unlawful for any can-

■

didate for election to the office of alderman to pay or give, or offer to pay or give, to any person, directly or indirectly, money or anything of value, or to knowingly suffer any person to do so, for the purpose of obtaining the vote or influence of any elector in behalf of his candidacy, or for obtaining the vote or influence of any elector against an opposing candidate; and makes such conduct disqualify the candidate for the office of mayor or commissioner of said city, in addition to the other penalties prescribed by law for such offenses. Under this provision no candidate can pay or give, or offer to pay or give, directly or indirectly, money or other thing of value, or knowingly permit any other person to do so, for the purpose of obtaining the vote or influence of any elector in his own behalf, or against an opposing candidate. A candidate is disqualified under this provision if he pays or gives, or offers to pay or give, directly or indirectly, money or something of value, or knowingly permits some other person to do so, for either of the purposes above mentioned. Before a candidate violates this section, he must pay or give, or offer to pay or give, to an elector money or other thing of value, or knowingly permit some other person to pay or give, or offer to pay or give, money or other thing of value to an elector to secure his vote or influence in his own behalf or against an opposing candidate. There must be payment or gift, or offer of payment or gift, directly or indirectly, of money or other thing of value to the person whose vote or influence is sought to be obtained. This provision makes bribery unlawful and disqualifies the briber from holding the office of mayor or commissioner of Cartersville.

One of the chief questions for decision is whether respondents in the published announcements of their candidacies offered to pay or give, directly or indirectly, "anything of value" for the purpose of obtaining the vote or influence of the electors in their behalf? In answering this question we must determine what is the meaning of "anything of value" in the first of the above provisions of the charter of Cartersville. Bribery or attempted bribery was punishable as a crime at common law. Curran v. Taylor, 92 Ky. 537 (18 S. W. 232) ; State v. Jackson, 73 Me. 91 (40 Am. R. 342) ; State v. Cole, 107 S. C. 285 (92 S. E. 624) ; 20 C. J. 282, § 410 (j). A review of the decisions of other courts, in dealing with bribery at common law, or under statutes similar to the first of the

above provisions of the charter of this city, will shed light upon the meaning of the language, "anything of value," in said provision. It has been generally held that offers made and statements published by candidates for public office, that they will serve, if elected, at less salaries or for smaller fees than those fixed by law, are in violation of the corrupt-practice acts, such as those contained in the above provisions of the charter of the City of Cartersville. Some of these decisions hold that such offers render the election void. Others hold that votes secured by such offers should not be counted in favor of the candidate making them. State v. Purdy, 36 Wis. 213 (17 Am. R. 485); Prentiss v. Ditmer, 93 Ohio St. 314 (112 N. E. 1021, L. R. A. 1917B, 191); State v. Elting, 29 Kan. 397; Carrothers v. Russell, 53 Iowa, 346 (5 N. W. 499, 36 Am. R. 222); Kundert v. Madison, 39 S. D. 43 (162 N. W. 898); State v. Collier, 72 Mo. 13 (37 Am. R. 417); Diehl v. Totten, 32 N. D. 131 (155 N. W. 74, Ann. Cas. 1918A, 884); State v. Dustin, 5 Ore. 375 (20 Am. R. 746); State v. Humphreys, 74 Tex. 466 (12 S. W. 99, 5 L. R. A. 217); State v. Bunnell, 131 Wis. 198 (110 N. W. 177, 11 Ann. Cas. 560); Fields v. Nicholson, 197 Ind. 161 (150 N. E. 53).

The underlying principle of these decisions is that when a candidate gives an elector personally money or property to secure his vote, it is direct bribery or a direct attempt to bribe the elector by a pecuniary consideration, and that when candidates offer to discharge the duties of elective offices which they seek for less than the salaries fixed by law, and which must be paid by taxation, they offer to reduce pro tanto the amount of taxes which each individual taxpayer must pay, and are thus indirectly making the same offer of pecuniary gain to the voter as if they were offering him money directly. Such cases rest upon the simple proposition that the election of a candidate for office can not be secured by personal bribery, effected by an offer of money or anything of value by the candidate directly or indirectly to the voter to secure his vote or influence. State v. Elting, supra. So in People v. Thornton, 60 How. Pr. (N. Y.) 457, a promise by a candidate for county judge, in a circular published in a newspaper, to serve for less than the statutory salary, was held to violate the spirit of the constitutional provision requiring officers to swear that they had not directly or indirectly paid or offered, or promised to

contribute, any money or any valuable thing as consideration or reward for votes at the election in which they were chosen. In Bush *v.* Head, 154 Cal. 277 (97 Pac. 512), where a statute provided for an additional judge of a court, it was held that a promise by a candidate for such judgeship, that if elected he would not qualify, and the office would thereby be left vacant, and the taxpayers would be relieved of the expense of maintaining it, amounted to an offer or promise to pay "money or other valuable consideration" to induce voters to vote in a particular way, which under the statute authorized a contest of the election. In Fields *v.* Nicholson, supra, the Supreme Court of Indiana held that publication of an article purporting to be signed by a candidate, pledging himself, if elected, to refund part of his salary and make no charge for office rent, constituted an offer of reward to secure election, within the meaning of a provision of the constitution of Indiana, which made ineligible for office a candidate who offered "a reward to secure his election."

All the foregoing decisions were based upon the fact that the candidates offered to give something of value, belonging to them, indirectly to the voters to secure their support. By agreeing to accept offices and to serve for less salaries than those fixed by law, which had to be paid from taxation, the candidates offered in effect to give something of value, which belonged to them, to taxpaying voters in order to secure their support and vote. People *v.* Thornton, supra. In making such offers candidates expect that the voters will be controlled, not by their judgment of the fitness of the candidate for office, but by the pecuniary benefit to be received. It is money and not judgment which directs the ballot; and the election turns, not on consideration of fitness for public service, but of private gain for the voter. That which is wrong and unlawful when done directly is equally wrong and unlawful when done indirectly. If salaries are paid by taxation, when a candidate offers to take less than the stated salary, he offers to reduce pro tanto the amount of taxes which each taxpayer must pay. If a candidate offered to pay any part of the taxes due by a voter, however small, that clearly would be direct bribery. When he offers to serve for such a salary as will reduce the tax upon the taxpayer any amount, he is indirectly making the same offer of pecuniary gain to the voter. These decisions rest upon the

simple proposition that the election of a candidate for office can not be secured by personal bribery offered directly or indirectly to the voter. 9 R. C. L. 1127, § 128. So a candidate for election does not violate the first of the above provisions of the charter of the City of Cartersville, unless he directly or indirectly pays or gives money, or offers to pay or give money, or other thing of value, which can be measured by money, to an elector, or knowingly suffers another person to do so, for the purpose of obtaining the vote or influence of the electors in his own behalf or against an opposing candidate. But, under the facts alleged, we are of the opinion that the petition does not bring this case within this rule, and does not make a case of bribery under the first provision of the charter with which we have been dealing.

This brings us to consider whether the petition makes a case of bribery under the second provision of the charter set out above. This provision makes it unlawful for any candidate for office, or any officer of the City of Cartersville, directly or indirectly, to give or promise any person or persons any office, position, employment, benefit, or anything of value, for the purpose of influencing or obtaining the political support, aid, or vote, of any person or persons. To bring a case within the purview of this provision of the charter there must be a gift or promise to a voter or other person of an office, position, employment, benefit, or anything of value, for the purpose of influencing or obtaining the political support, aid, or vote of a person or persons. Under this provision a candidate can not give or promise any person or persons an office, position, employment, benefit, or anything of value for the purpose of obtaining his or their political support, aid, or vote. This language is very broad. While this is so, does it mean that a candidate for the office of alderman in the City of Cartersville can not make any promise of benefits which will flow to the people of the town generally from any course of official conduct which the candidate will pursue if he is elected to office in that city? Does it prohibit those multitudinous promises made by candidates of future and indefinite benefits which will come to the public as a whole by the course of official conduct proposed by the candidate? To bring the case within the purview of this provision of the charter there must be a gift or promise of an office which the candidate, if elected, can bestow, or secure, or aid in securing; an em-

ployment which the candidate, if elected, can give or secure, or some benefit or thing of value which it will be in the power of the candidate, if elected, to confer upon another. It must be a personal gift or promise from the candidate to the person or persons whose influence or political support, aid, or vote is sought. There is a wide difference between such a gift or promise and those many promises made by candidates of future and indefinite benefits which will come to the public as a whole from a course of official conduct which the candidate outlines while running for office. The latter are made in the public interest, and are consistent with the personal fitness of the candidate for the office sought. The former savors of bribery, involving a personal gift or promise from candidate to voter in order to secure his influence, aid, or vote, and in which the test of fitness is ignored. Prentiss v. Ditmer, supra. In Board of Supervisors v. Judges of Wayne Circuit Court, 106 Mich. 166 (64 N. W. 42), the Supreme Court of Michigan held that "An election determining that a county building shall be built is not invalid on the ground that workmen were induced to vote for it on the ground that it would furnish them with employment." The court further said: "If such a proposition was submitted to the electors, and the property owners in that vicinity should vote for the proposition because it would put money in their pockets, and should, in the press or in public meetings or in private solicitations, urge electors to vote for it for that reason, would they consider themselves to have been guilty of corrupting the voters? If the principle insisted upon is correct, there is probably not a single county building, or the removal of any county seat, which could not have been enjoined on the ground of the corruption of the voters."

A donation to secure at an election the location of a county site has been upheld in many cases. Lucas County v. Hunt, 5 Ohio St. 488 (67 Am. D. 303); Harris v. Shaw, 13 Ill. 456; Hall v. Marshall, 80 Ky. 552; Newton v. Com'rs, 26 Ohio St. 618; Adams v. Logan County, 11 Ill. 336; Calaveras County v. Brockway, 30 Cal. 325; Odineal v. Barry, 24 Miss. 9; Lund v. Chippewa County, 93 Wis. 640 (67 N. W. 927, 34 L. R. A. 131); State v. Supervisors, 24 Wis. 49; State v. Johnson, 52 Ind. 213; Wells v. Taylor, 5 Mont. 202 (3 Pac. 255); Douglass v. Baker County, 23 Fla. 419 (2 So. 776); Neal v. Shinn, 49 Ark. 227 (4 S. W. 771);

Board of Supervisors *v.* Judges of Wayne Circuit Court, supra; Stilson *v.* Com'rs, 52 Ind. 213; Hawes *v.* Miller, 56 Iowa, 395 (9 N. W. 307); Atty.-Gen. *v.* Supervisors, 33 Mich. 289; Leavenworth *v.* Wilson, 69 Kan. 74 (76 Pac. 400, 2 Ann. Cas. 367, 368); Dishon *v.* Smith, 1 Iowa, 212; People *v.* County Officers, 15 Mich. 85; State *v.* Orange, 54 N. J. L. 111 (22 Atl. 1004, 14 L. R. A. 62); State *v.* Elting, supra. In the case last cited, which is relied upon by counsel for the plaintiffs, Judge Brewer, speaking for the Supreme Court of Kansas, said: "Where the question is as to the location of a county seat, that question is one of convenience and material advantages; and where citizens of a town, contesting for such county seat, offer to donate money or other property to the county in case the county seat is located at such town, that offer presents no consideration which may not properly be considered by the electors, and vitiates no votes cast in pursuance of such offer." There are some decisions which hold to the contrary. Ayres *v.* Moan, 34 Neb. 210 (51 N. W. 830, 15 L. R. A. 501, 11 Ann. Cas. 567). Some hold to the contrary by reason of statute or constitutional provision against offering money or other thing of value, either directly or indirectly, for the purpose of influencing any voter for or against any competing town in the election for the location of a county seat. Town of Grove *v.* Haskell, 24 Okla. 707 (104 Pac. 56); City of Tecumseh *v.* City of Shawnee, 33 Okla. 494 (126 Pac. 440). We think that the ruling in the majority of these decisions expresses the better view, in the absence of constitutional or statutory provision to the contrary. While the line of demarcation between promises of benefit, which are condemned by the second provision of the charter of Cartersville, and promises of benefit which do not fall within the condemnation of this provision, can not be defined with absolute and comprehensive certainty, there is a clear distinction between these two classes of promises of benefit. The gifts or promises of benefit which fall within the prohibition of this provision of the charter are such as are definitely given or promised, directly or indirectly, by candidates to the individual voters to secure their support, and do not embrace promises of future and indefinite benefits which will flow to the public at large.

Applying the above ruling, does the petition set up a cause of action which comes within the range of the second provision of the

city charter with which we are dealing? The Georgia Power Company was negotiating with the City of Cartersville for the purchase of its light and gas plants and a franchise granting it power to do a light, power, and gas business in the City of Cartersville, and offered to the city for such plants and franchise the sum of $300,000. The question of the sale of the plants and the grant of the franchise became involved in the politics of the city. The Power Company further offered, in the event the sale of these plants was consummated and the franchise which it sought was granted, to develop the hydro-electric power upon the Etowah River near the city. The respondents favored the sale of the plants and the grant of the franchise sought by the Power Company. They published an announcement (heretofore set out in full) of their candidacies upon this program, and set out the reasons which influenced them in favoring the sale of the city's gas and light plants, and the grant of the franchise. In this announcement they stated that various benefits would accrue to the city and county by the sale of the former's gas and light plants, and the grant of the franchise which the Power Company sought. From this announcement it will fully appear what promises the respondents made to the voters of the city, and what benefits they alleged would flow to the citizens of the city and the county from the development of the power plant on the Etowah River, which would be undertaken by the Power Company only in the event it acquired these municipal plants and the franchise sought by it. In our opinion these future, indefinite, and general promises of benefit to the people of the city and to the county were not such promises as are prohibited by this provision of the charter of Cartersville. So we are of the opinion that the petition does not set out a cause of action under either of these provisions of the city charter; and that the trial judge did not err in holding that the petition failed to show a violation of these provisions.

■ We are next called upon to decide whether the irregularities in the nomination papers of the respondents rendered them ineligible to the offices to which they were elected, or rendered the election void, and would authorize a court, upon a quo warranto proceeding brought to test their title to the offices to which they were elected, to declare void their title to such offices. The charter of the city (Acts 1917, pp. 555-560) provides for primary elec-

tions for the nomination of the candidates for election to membership on the board of aldermen (§ 15) "to be voted for at the regular election. Every person desiring to become a candidate shall file or cause to be filed with the election managers, not later than ten days nor earlier than twenty days before the primary election, a statement of his candidacy and a certificate sworn to by him that he is qualified to fill the office to which he seeks election, and that he can make the required bond. He or some other person qualified to vote in the city shall file a certificate of no less than ten persons qualified to vote, and who are property taxpayers in the city, that his candidacy is desired by them and that to the best of their knowledge he is qualified to fill the office to which he seeks election." Section 16 of said act provides that if, during the time allowed in the above section "for the filing of statements and certificates by those desiring to become candidates, more than six qualified persons comply with the requirements of section 15, the election managers shall hold a primary election as provided in said section, and shall cause the names of all such persons to be printed as candidates upon the ticket to be used in the primary election, and shall cause to be published at least once, in a newspaper published in the city, the names of candidates who will appear on the ticket at the primary election, or post written notices thereof at some conspicuous place at the city hall and in two or more other conspicuous places within the city, at least five days before the day of election. No person's name who has not complied with section 15 of this act shall be placed upon the ticket." Section 19 provides "That in the event only six, or less than six persons, comply with section 15 as to filing statements and certificates, no primary election shall be held, but the names of such persons shall be placed on the ballots as candidates for the board of aldermen in the general election, and shall be voted for as such, unless any one or more should expressly withdraw before the election."

On December 3, 1927, each of the respondents filed with one of the election managers of the city a statement of his candidacy. The statement of respondent Green was sworn to on December 1, 1927, before W. J. Ham as notary public. The commission of Ham as such notary public had expired in January, 1923, and had not been renewed. The plaintiffs admitted that Ham had been acting as a de facto notary public from January, 1923, through December

3, 1927. To each of the statements filed by respondents was attached the request from more than ten citizens of the City of Cartersville, expressing their desire for the candidacy of each of the respondents. Neither of these requests was signed by ten qualified voters of the city, for the reason that some of the signers had not paid their taxes for the previous year six months prior to the date of the election. For the reason that the statement of respondent Green was sworn to before a de facto notary public, and for the further reason that neither of the requests for the candidacy of the respondents was signed by at least ten qualified voters, the plaintiffs contend that the respondents were ineligible to be voted for and elected as members of the board of aldermen of the city. We do not think that this contention is sound. The fact that the statement of Green was sworn to before a de facto notary public, both Green and the notary public thinking that he was a notary public de jure and both acting in good faith, did not invalidate or affect the statement of this respondent. *Smith* v. *Meador,* 74 *Ga.* 416 (58 Am. R. 438) ; *Tucker* v. *Roberts,* 151 *Ga.* 753, 756 (108 S. E. 222) ; *Penn* v. *McGhee,* 6 *Ga. App.* 631, 636 (65 S. E. 686) ; *Cooper* v. *Ricketson,* 14 *Ga. App.* 63, 68 (80 S. E. 217) ; *Citizens Bank* v. *Fort,* 15 *Ga. App.* 427, 429 (83 S. E. 678).

Are the respondents ineligible to these offices because each of them did not file a certificate signed by not less than ten persons qualified to vote, who were property owners in the city, that his candidacy was desired by them, and that to the best of their knowledge he was qualified to fill the office to which he sought election ? It must be borne in mind that these nominating regulations applied to candidates who desired to qualify themselves to be voted for in the primary election described by section 15 of this act. By section 16 it is provided that if more than six persons qualify by complying with the requirements of section 15, the election managers shall hold a primary election for the purpose of selecting nominees to be voted for in the general election for members of the board of aldermen of the city. Section 16 declares that "no person's name who has not complied with section 15 of this act shall be placed upon the ticket" to be voted for in the primary election. It will be noted that this portion of the charter does not declare that candidates who do not comply with these provisions are in-

eligible to the offices of aldermen of the city. At most, failure to comply with these requirements makes a person ineligible to be a candidate in the primary election. No primary election was held, for the reason that more than six persons did not qualify or attempt to qualify to enter as candidates in such election. Under these circumstances the charter provides that "no primary election shall be held, but the names of all such persons shall be placed on the ballots as candidates for the board of aldermen in the general election, and shall be voted for as such, unless any one or more should expressly withdraw before the election." It is urged by counsel for plaintiffs that under this provision of the charter no person's name could be placed on the ballots as a candidate for the board of aldermen in the general election, and that no person could be voted for and elected as a member of the board of aldermen in the general election, unless he had previously complied with the requirements necessary to enable him to have his name placed on the ballots in the primary election. They contend that the language "all such persons," in section 19, means such persons only as have fully complied with requirements for nomination as candidates in the primary election. This construction would render these provisions of the charter unconstitutional, for the reason that they would create other qualifications for office, additional to those provided by the constitution and laws of this State, and abridge the constitutional rights of the electors.

In *Stewart* v. *Cartwright,* 156 *Ga.* 192, 197 (118 S. E. 859), this court through Mr. Justice Atkinson said: "There can not be any doubt that a statute providing for an official ballot for use at a general public election, which directs the form to be of such character as will deny the voter his right to vote for whomsoever he pleases, would be violative of" article 2, section 1, paragraph 2, of the constitution of this State, which declares that "Every . . citizen of this State, who is a citizen of the United States, twenty-one years old or upwards, not laboring under any of the disabilities named in this article, and possessing the qualifications provided by it, shall be an elector and entitled to register and vote at any election by the people." In that case this court approved the doctrine that "the legislature can not . . restrict an elector to voting for some one of the candidates whose names have been printed upon the official ballot. He must be left free to vote for

whom he pleases, and the constitution has guaranteed to him this right." See, on this subject, State v. Anderson, 26 Fla. 240 (8 So. 1) ; Cole v. Tucker, 164 Mass. 486 (41 N. E. 681, 29 L. R. A. 668). In *Stewart* v. *Cartwright* this court was dealing with a statute which declared a candidate ineligible to be voted for office, who had not complied with certain preliminary requirements enabling him to become a candidate. In the case at bar these provisions of the charter do not declare any person ineligible to the office of alderman who has not complied with the preliminary requirements in the primary election. So we are of the opinion that the placing by the election managers of the names of the respondents upon the tickets for the general election, although they had not complied with the requirements of the charter entitling them to be placed upon the tickets for the primary election, would not render the respondents ineligible for election as aldermen of the city in the general election, and would not render such election void.

Furthermore, we are of the opinion that the following statement of the law upon this subject is correct: "All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, unless the provisions affect an essential element in the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election or that its omission renders it void. Voters finding a ticket, or the names of candidates on the official ballot, are not required to determine whether they are entitled to a place thereon, but may safely rely on the action of the officers of the law, and on the presumption that they have performed their duty. And so an election in which the voters have fully, fairly, and honestly expressed their will is not invalid because the certificate of nomination of a successful candidate is defective through an omission of some detail." 9 R. C. L. 172, 173, § 161. "Objections relating to nomination must be timely made; otherwise they may be regarded as waived. It is too late to make them after the nominee's name has been placed on the ballot and he has been elected to office; his election can not be impeached on the ground that statutory requirements regarding nomination

were not complied with in his case, or that his nomination was procured by unlawful means." 20 C. J. 132 (§ 152) 3. "In the absence of statutory provision to the contrary, an election is not invalidated by the fact that the nomination of the successful candidate was fraudulent or illegal, because not made in the manner prescribed by statute, unless the non-compliance with the law had the effect of preventing a fair vote." Territory *v.* Kanealii, 17 Hawaii, 243 (7 Ann. Cas. 837). "No election shall be defeated for non-compliance with the requirements of law, if held at the proper time and place, by persons qualified to hold it, if it is not shown, by that non-compliance, the result is different from what it would have been had there been proper compliance." Civil Code (1910), § 126.

It is alleged in the petition and admitted by the defendants that the election was valid. There is no contention that it was not fairly conducted, or that there was any fraud. There is no claim that the result would have been different if the respondents had complied with the requirements of the charter relating to the nomination of candidates to be voted for. In these circumstances we do not think that the respondents should be held ineligible to the offices to which they were elected. Even if the respondents were ineligible to the offices to which they were elected by a majority of the votes cast in the election, the effect would not be to give the offices to the qualified persons having the next highest number of votes, but to invalidate the election; and in such a case a new election should be ordered. *Hardwick* v. *Swearingen,* 12 *Ga.* 23; *Crovatt* v. *Mason,* 101 *Ga.* 257 (28 S. E. 891); *Dobbs* v. *Buford,* 128 *Ga.* 483 (57 S. E. 777, 11 Ann. Cas. 117). We do not mean to hold that it was not essential to the validity of the nomination of the respondents as candidates in the primary election that they should comply with the substantial requirements of these provisions of the charter of the city, including that relating to the signatures of qualified voters to the certificates expressing their desire for the candidacy of the respondents in the primary election. It is mandatory on the managers to see that candidates comply with such requirements. Upon timely objection made before the names of persons had been placed as candidates upon the tickets for the primary election, such objection should have been sustained; but, as we have seen above, no election should be de-

feated for non-compliance with the requirements of law as to the nomination of candidates, if the election was properly held, and if it is not shown that the result would have been different had there been compliance. There are some cases which hold that non-compliance with such preliminary requirements as to nomination will defeat the election of a candidate; but we think the view which we announce expresses the better and sounder law. It follows from the principles above announced that the petition did not set forth a cause of action, and that therefore the trial judge did not err in sustaining the demurrer to the petition.

*Judgment affirmed. All the Justices concur.*