Allen, J.
 

 The notice of contest of election filed in the court of common pleas, probate division, Paulding county, Ohio, for the purpose of attacking the election of Clark, Bruñe, and Mentzer, specified in its material portions the following:
 

 “That the said Harry Clark, O. E. Bruñe and W. R. Mentzer with the intention of influencing the
 
 *562
 
 electorate of said village of Paulding, Ohio, on the eighth day of November, 1927, and for at least four days immediately preceding said election made, circulated and published a printed bill and declaration of what they would do if elected to said board of trustees of public affairs of said village of Paulding, which promise as printed, published and circulated is in words and figures as follows, to wit:
 

 “These candidates, if elected, will do the following : * # *
 

 “5. To furnish without charge, clean wholesome well water for the community swimming pool during the few summer months it is used, rather than compel the children of our town to swim in filtered creek water. ’ ’
 

 Section 5175-26, General Code, in its material portions, reads as follows:
 

 “Any person is guilty of a corrupt practice if he, directly or indirectly, by himself or through any other person, in connection with, or in respect of any election, pays, lends or contributes, or offers or promises to pay, lend or contribute any money or other valuable consideration, for any other purpose than the following matters and services, at their reasonable, bona fide and customary value.”
 

 Section 5162, General Code, under which this contest was brought, provides that the contestor must notify the probate judge of the county of his intention to contest the election, specifying .the points on which the contest shall be based.
 

 Section 5165, General Code, provides that no evidence shall be admitted which does not relate to points set forth in the notice.
 

 From these sections, it is evident that the speci
 
 *563
 
 íication of points corresponds in its function to a petition in a civil action, or an indictment in a criminal prosecution. In the words of Judge Welch, in the case of
 
 Howard
 
 v.
 
 Shields,
 
 16 Ohio St., 184, at 188:
 

 “The ‘points’ to be specified, are * * * to advise him [the contestee]
 
 at what points
 
 the attack will be made, in order that he may fortify, and not be taken by surprise.”
 

 Hence the points specified must be stated with sufficient definiteness to apprise the contestee of the' general nature of the objections to be made at the trial of the contest. They must also set forth objections which, if established by proof, will in contemplation of law invalidate the election attacked. If a corrupt practice is charged, the points must embody facts which in contemplation of law constitute a corrupt practice. If no such facts are alleged, no corrupt practice is charged, and whatever proceedings are taken under the specification of points are void.
 

 The controlling question, therefore, is whether the facts urged as a basis of contest, in contemplation of law, constitute grounds sufficient to invalidate the election. In other words, was the promise printed and circulated among the voters by the defendants in error during their campaign for election as members of the board of trustees of public affairs of the village of Paulding a violation of the Corrupt Practices Act?
 

 It has previously been held in this state that a promise made by a candidate for judge of the court of common pleas, for the purpose of effecting his election to office, that in the event of his election he
 
 *564
 
 will accept for Ms judicial services only the stipulated salary payable by the state, and that he will accept nothing that may be due and payable to him from the local or county treasury, is against public policy and an offense within the purview of Section 5175-26, General Code, which, if proven, invalidates his election.
 
 Prentiss
 
 v.
 
 Dittmer,
 
 93 Ohio St., 314, 112 N. E., 1021, L. R. A., 1917B, 191. This holding is in accord with the weight of authority.
 
 Carrothers
 
 v.
 
 Russell,
 
 53 Iowa, 346, 5 N. W., 499, 36 Am. Rep., 222;
 
 Diehl
 
 v.
 
 Totten,
 
 32 N. D., 131, 155 N. W., 74, Ann. Cas., 1918A, 884;
 
 Bush
 
 v.
 
 Head,
 
 154 Cal., 277, 97 P., 512.
 

 It has also been held that a candidate for public office, who, during his campaign, by word of mouth solicits the vote of an elector who has the right to vote for him at such election, and at the same time dispenses intoxicating liquor to such elector, brings himself clearly within the terms and meaning of the Corrupt Practices Act.
 
 Miller
 
 v.
 
 Maier,
 
 136 Minn., 231, 161 N. W., 513, 2 A. L. R., 399.
 

 A note upon the question of the treating of voters by candidates for office as a violation of a corrupt practices act may be found in 2 A. L. R., at page 402.
 

 In this case, however, the facts differentiate themselves sharply from the decisions cited. In the
 
 Prentiss case, supra,
 
 the candidate promised the electors of the county a distinct pecuniary consideration moving from himself, if he were elected. The plaintiffs in error herein endeavor to bring themselves within the purview of the holding in the
 
 Prentiss case
 
 by urging that the candidates, in promising to furnish water without charge, were themselves promising to contribute and pay for such water for a swim-
 
 *565
 
 ruing pool, conceded to be open to the citizens of the village without charge. However, the case seems rather to fall within the line of the facts in
 
 Fordham
 
 v.
 
 Stearns,
 
 122 Or., 311, 258 P., 822. That case held that the announcement by a candidate for school director that if elected he would be in favor of retaining certain teachers was not in violation of the corrupt practices statute. The alleged violator of the Corrupt Practices Act had made the following declaration to his neighbors and constituents:
 

 “I was a member of the school board which brought Mr. and Mrs. Howard here as teachers, and 1 believe we have had the best school we ever had, and I want to see them remain in the school. If you want Mr. and Mrs. Howard to teach this next year, then you should vote for me; if you don’t want them, vote for Prank Bogue.”
 

 His opponent took the floor and said:
 

 “I have been asked, by several people, to run for this office, and I will say that if I am elected there will be a change of teachers.”
 

 The Supreme Court of Oregon decided this to be a mere declaration of principle on the part of the candidates, and not a corrupt practice.
 

 A decision along the same general line of reasoning is found in
 
 Board of Supervisors of Wayne County
 
 v.
 
 Wayne Circuit Judges,
 
 106 Mich., 166, 64 N. W., 42, which held that an election to decide upon a purchase of the site for, and the erection of, a courthouse and other buildings, was not invalidated because the voters were urged by means of posters to vote therefor on the ground that the erection of the buildings would give employment to a great many workingmen. While this statemént appealed
 
 *566
 
 to economic considerations, it constituted a mere general argument in favor of erecting the buildings, and not a personal offer of wages to workingmen by the candidates.
 

 The adjudicated cases upon the subject are not many. However, they make a clear distinction between the definition of policies to be followed by the candidate in the interest of the public, if elected, or general arguments in favor of the election of the candidate (even if they appeal to economic considerations, as in the
 
 Wayne County case, supra)
 
 and the offer of a personal pecuniary or property consideration for the purpose of influencing the vote. In the instant case, the record shows that the management of the swimming pool and of the waterworks by the incumbent trustees was under public scrutiny in this particular election. The same handbill in which the plaintiffs agreed to furnish clean water free of charge for the swimming pool, in attacking the policies of the opposing candidates, says: “They did not say why they objected to giving the children a little fresh water for the swimming pool.” The handbill also,pointed out the fact that the incumbent board members allowed a bill for $1,365, owed by a certain Sid Barnes, to go uncollected until Barnes was adjudged a bankrupt. The entire conduct of the waterworks was being sharply criticized, and one of the points of particular attack was the failure to give healthful water to the children swimming in the municipal pool., The statement attacked as a violation of the Corrupt Practices Act was merely a natural definition of the policies which would be followed by the candidates in question if they were elected. Instead
 
 *567
 
 of promising to pay for this water themselves, it is a fair inference that the candidates were pledging themselves to nse all of their official powers, if elected, to induce the council by ordinance to supply the water, an act legal and valid under Section 3982-1, General Code. This section reads as follows:
 

 “The council of any municipality owning and operating municipal water, gas, or electric light plants, may provide by ordinance to furnish free of charge the products of such plants when used for municipal or public purposes.”
 

 Since the points of contest set up no other violation of this or any other statute, nor any other ground of contest, they did not embody any valid charge against the defendants in error, and the decision of the jury was void. Hence the case presents a completely different question of law from the case' of
 
 State, ex rel. Felder,
 
 v.
 
 McVay,
 
 115 Ohio St., 588, 154 N. E., 810, in which the issue presented was as to the validity of the contest merely. While the
 
 MeVay case
 
 did involve an election contest der cided in favor of MeVay prior to the institution of the
 
 quo warranto
 
 case, the sufficiency of the contest points, .so far as the record discloses, was never challenged by demurrer or otherwise.
 

 In this view of the case, it is of no legal moment to decide whether the vacation of the decision of the freeholders by the judge, and the granting of a new trial, had any legal effect; nor whether the same facts relied upon by the relators in the election contest could properly be relied upon in the
 
 quo warranto
 
 proceedings. Since the notice of contest set forth no valid ground of contest, and the decision
 
 *568
 
 of the freeholders was void, the Court of Appeals rightly entered the judgment of ouster and induction.
 

 Judgment affirmed.
 

 Marshall, C. J., Kinkade, Robinson, Jones, Matthias and Day, JJ., concur.