STATE OF FLORIDA, *ex rel.* ERNEST F. COE, v. J. M. LEE, as Comptroller of the State of Florida
3 So. (2nd) 497
Division A
Opinion Filed June 10, 1941
On Various Motions August 1, 1941

*Benjamin Axleroad, Keen & Allen* and *A. Frank O'Kelley, Jr.,* for Relator;

*J. Tom Watson,* Attorney General, and *Lewis W. Petteway,* Assistant Attorney General, for Respondent.

BUFORD, J.—Alternative writ of mandamus issued herein on March 25, 1941, commanding the respondent, Hon. J. M. Lee as Comptroller of the State of Florida, as follows:

"That you perform your duty of signing warrants for the petitioner's salary lawfully due him from the 16th day of July, 1937, to the 16th day of November, 1937, amounting to the sum of $1331.31, or else to appear before the Supreme Court of the State of Florida, at the Supreme Court Building in the City of Tallahassee, Florida, on the 4th day of April, 1941, at 9:30 A. M., and that you then and there show cause why the relief prayed for and sought by the petitioner in said petition for Writ of Mandmaus should not be granted, to-wit: to sign the warrants for salary which he claims is lawfully due him from July 16, 1937, to November 16, 1937, in the sum of $1331.31 as aforesaid."

The case is now before us on motion to quash the alternative writ and on motion for peremptory writ.

The allegations of the alternative writ are sufficient to show that on July 23, 1935, the relator, being a member of Everglades National Park Commission, was duly appointed and commissioned as executive chairman of such commission and that he immediately en-

tered upon and performed the duties devolving upon him as such official until the 16th day of November, 1937, when his successor was appointed and qualified; that on June 10th, 1937, relator tendered to the then Governor of Florida his resignation "as a member of the Everglades National Park Commission and *Executive Chairman* of that body"; that on July 16, 1937, the Governor, in writing, accepted the resignation of relator as "Executive Chairman and Member of the Everglades National Park Commission"; that relator continued to function as a member of and as Executive Chairman of Everglades National Park Commission until November 16, 1937, as hereinbefore stated; that his salary was paid until July 16, 1937, but, although he promptly made requisition for his salary as provided by law each and every month, the Governor refused to allow such salary to be paid to relator.

The sole question is whether or not (under the allegations of the alternative writ) the relator is entitled to receive the salary provided by law to be paid to the Executive Chairman of Everglades National Park Commission for the four months succeeding the acceptance of his resignation and preceding the appointment and qualification of his successor.

Section 1 of Chapter 16996, Acts of 1935, amending Section 1 of Chapter 13887, Acts of 1929, provides:

"That a Florida State Commission is hereby created under the name of Everglades National Park Commission and is referred to in this Act as the Commission. Said Commission shall be composed of twelve members, all residents of the State of Florida and shall be appointed by the Governor for a period of four years, or until their successors are appointed and qual-

ified.  Any vacancies occurring in said commission shall be filled by the Governor.

"The members of said commission including the chairman, with the exception of the executive chairman, and executive secretary, shall receive no compensation for their services but may be paid transportation expenses at the rate of 5% per mile and other necessary and actual traveling expenses not to exceed Four Dollars and Fifty cents ($4.50) per day for time consumed in attending duly ordered commission meetings and for other occasions where travel is involved and as may be authorized by the commission.

"The said chairman shall be elected from among the twelve commission members by a majority vote of the members.  The executive chairman and the executive secretary shall be appointed by the Governor, the executive chairman appointed shall be selected from the members of the commission.  The salary of said executive chairman and executive sceretary shall be fixed by the Governor and paid from appropriations for the commissions not more than Four Thousand Dollars ($4,000.00) per annum for the executive chairman and not more than Twenty-Five Hundred Dollars ($2500.00) per annum for the executive secretary.  The executive chairman shall have and select his secretary, whose salary shall be fixed and paid from appropriations for the commission in a sum not to xeceed Sixteen Hundred and Eighty Dollars ($1680.00) per annum.

"The said executive chairman, executive secretary and secretary to the executive chairman shall also receive necessary and actual transportation and traveling expenses in the same manner and at the same

rates as herein provided for members of the commission."

It will be noted that the statute provides (1) there shall be twelve members of the commisssion; (2) the members of the Commission shall be appointed for four years or *until their successors are appointed and qualified;* (3) The executive chairman shall be appointed by the Governor; (4) The executive chairman appointed shall be selected from the members of the commission.

It is clear that the office of executive chairman is dependent upon the incumbency of the office of member of the commission.

The resignation of relator was from the office of member of the commission and from the office of executive chairman of the commission. Respondent appears not to question that under the statute relator retained the status of a member of the commission until his successor was appointed and qualified.

Perhaps relator could have resigned as executive chairman without resigning as a member of the commission. But, had he done so, it appears that it would have been his duty to continue to function as executive chairman until his successor was duly appointed and qualified.

On the other hand, had relator resigned as a member of the commission and a vacancy had occurred by reason of the acceptance of his resignation it would have been his duty, under the terms of the statute, to continue to function until his successor was appointed and qualified and his duty in that regard would have required him to function as executive chairman. If in such case the Governor had accepted his resignation as a member of the commission and thereafter ap-

pointed another person to succeed him as such member, upon that appointment being made the office of executive chairman would automatically become vacant because the executive chairman, under the term of the statute, must be a member of the commission.

It will also be noted that in accepting the resignation of relator, the Governor accepted it as to the office of member of the commission as well as to the office of executive chairman of the commission. Therefore, it seems to us clear that relator's incumbency of the office of member of the commission and office of executive chairman of the commission terminated with the appointment and qualification of his successor and if during the interim, between the acceptance of the resignation and the appointment of the successor, relator continued to perform the functions and duties of a member of the commission and of executive chairman of the commission he is entitled to the compensation provided by the statute, *supra,* for his services for that period of time.

In 22 R. C. L., page 555. Sec. 258, the text reads:

"The purpose of constitutional or statutory provisions authorizing public officers to hold over is to prevent a hiatus in the government pending the time when a successor may be chosen and inducted into office. Where a constitutional or statutory provision exists, permitting or commanding an incumbent of an office to continue in the discharge of his duties until his successor is qualified, the expiration of the official term not only does not create a vacancy, but the period between the expiration of his term and the qualification of his successor is as much a part of the incumbent's term of office as the fixed statutory period. This is true even where a person is elected his own

successor. Hence, the incumbent of an office the term of which is for a specified period, 'and until his successor is elected and qualified' is entitled to retain the office after the lapse of the specified period, in the event of the election of another person to succeed him who is ineligible, or in the event of a failure of the proper appointing authority to make any appointment whatever.

"One who holds over until his successor is qualified continues as the incumbent of the office although he has formally resigned and his resignation has been accepted."

Under the latter enunciation there is cited the case of Haymaker v. State *ex rel.* McCain, 22 N. Mex. 400, 163 Pac. 248. In that case the Court, *inter alia,* said:

"In People v. Supervisor, 100 Ill. 332, it was said that in order to make the resignation effectual it must be followed by the act of the successor in qualifying for the office. It was also said in that case that the statute providing that officers should hold office until their successors are elected and qualified was significant as denoting the policy of the State, that the 'Public convenience shall not suffer from a vacancy in such public offices, but that the office shall ever be full, so that there will always be someone competent to perform the duty belonging to the office.' Assuming that the resignation of the plaintiff in error of the first office had been accepted, a vacancy as defined in Section 3955 Code 1915, did occur in the office of member of the board of education of the city. But in view of the constitutional provision, cited *supra,* the vacancy, so-called, was not a corporeal vacancy; a condition simply arose thereby which gave the right

to the appointing or electing power to appoint or elect some person to the said office in the place and stead of the plaintiff in error. In other words, the right to fill the first office, by the proper power, was initiated thereby, but such right had no effect whatever upon the status of the plaintiff in error with respect to that office until the successor qualified for the office. All that is said in this regard equally applies to the provisions that the acceptance, etc., of an incompatible office vacates the first office. Such was the effect of the holding in Oliver v. Mayor of Jersey City, 63 N. J. Law, 634, 44 Atl. 709, 48 L. R. A. 412, 76 Am. St. Rep. 228, the court saying:

" 'It would therefore be a pure solecism to call the office vacant at that time except in the strictly legal sense of having no occupant with a *de jure* title. . . . It is, therefore, manifest that the words of the statute . . . already quoted, declaring that when a commissioner accepts another office his former office shall become *vacant* cannot mean in a situation like this that it is corporeally vacant, for the person lawfully elected to fill it remained in possession discharging its duties. . . . The legal meaning of the words in such circumstances is that the office has no occupant who holds by a good title in law, and that the appointing power may at once be exercised to fill it, or if it is an elective office, the people may elect, and no adjudication is required to declare the vacancy, although the newly appointed or elected officer may find it necessary afterwards to resort to quo warranto proceedings to obtain actual possession of the office.'

"In no sense, then, can the office be said to be vacant, except for the purpose of supplying another person to fill it, and likewise the argument that the

plaintiff in error voluntarily removed herself from the incumbency of the first office by her resignation is equally untenable."

The provision of Section 14 of Article XVI of our Constitution are not applicable to this case because that provision only applies to officers holding over after the expiration of their official terms, which is not involved here.

The motion to quash is denied and the respondent is allowed ten days in which to file answer or return, if he be so advised. If no sufficient answer or return should be filed within the above stated period, then the peremptory writ shall be awarded.

So ordered.

BROWN, C. J., WHITFIELD, TERRELL, THOMAS and ADAMS, J. J., concur.

CHAPMAN, J., dissents.

### ON VARIOUS MOTIONS

PER CURIAM.—This case is before us on three motions, viz.:

(1st.) Motion for leave to amend alternative writ of mandamus;

(2nd.) Motion to strike from the answer of the respondent application for a rehearing in said cause, and

(3rd.) Motion to quash answer of the respondent to the alternative writ of mandamus.

Leave to amend the alternative writ so the command thereof will read as follows:

"Now, therefore, this is to command you, the said J. M. Lee, Comptroller of the State of Florida, that you perform your duty of signing warrants for the petitioner's salary lawfully due him from the 16th day of July, 1937, to the 16th day of November, 1937,

amounting to the sum of $1331.31, and forthwith deliver to the relator, or to Benjamin Axleroad, his attorney of record herein, the warrants so signed by you, or else to appear before the Supreme Court of the State of Florida at the Supreme Court building in the City of Tallahassee, Florida, on the 2nd day of June, 1941, at 10:00 A. M. and that you then and there show cause why the relief prayed for and sought by the petitioner in said petition for writ of mandamus should not be granted, to-wit: to sign the warrants for salary which he claims is lawfully due him from July 16, 1937, to November 16, 1937, in the sum of $1331.31, as aforesaid."—is granted.

Petition for rehearing has been denied so the motion to quash the answer and return will be considered as motion for peremptory writ notwithstanding the answer and return.

The allegations of the answer and return are insufficient to constitute any defense to the alternative writ not considered and set at rest by our opinion and judgment filed herein on June 10, 1941.

It, therefore, follows that peremptory writ of mandamus will be awarded according to the order of the amended alternative writ.

So ordered.

BROWN, C. J., WHITFIELD, BUFORD and ADAMS, J. J., concur.